JAMES P. WHITE *versus* ADELINE H. MANN, *Executrix.*

If the conveyance of a vessel, held as security for a loan, and the payment of the money loaned, are by the contract to be simultaneous acts, it is sufficient for the party claiming from the other a performance of the contract, to show a readiness and an offer to perform. A formal and technical tender is not required of him.

But in such case if a tender were necessary, it would be sufficient to show, that he had done all that could be done on his part to accomplish what, by the contract, he was bound to do.

The rule, that if a thing become physically impossible to be done by the act of God, performance is excused, does not prevail, when the essential purpose of the contract may be accomplished. If the intention of the parties can be substantially, though not literally, executed, performance is not excused.

Where the fourth part of a vessel was conveyed to the master thereof, as collateral security for the payment of a sum of money loaned, within one year; "it being well understood, that if said quarter of said vessel is not redeemed within the time above named, then it is to be considered as a *bona fide* sale; it being further understood, that if the vessel meets with any loss not covered by insurance, by not obtaining successful business, or any misfortune or casualty of any name or description, it is to be borne by you, (the mortgagor); and all net earnings and profits, after deducting insurance and charges of every name or kind, shall be paid over to you, when you claim to redeem her;" and insurance is effected on the vessel " for the owners thereof;" the vessel is lost, and the fourth part of the insurance money is paid to the representative of the mortgagee within the year, and the mortgagor within that time claims the right to redeem, and to have the insurance money accounted for to him. *It was held*, that the mortgagor was entitled to redeem, and to have the amount received of the insurers for the loss accounted for to him.

When a person leaves his usual place of residence with an intention of returning to it, and continues to be absent from it for seven years, without being heard of, he is presumed to be dead. But the time when such presumption will arise, may be greatly abridged by proof, that the person has encountered such perils as might be reasonably expected to destroy life, and has been so situated, that according to the ordinary course of human events, he must have been heard of, if he had survived. No general or certain rule can in such cases, be established; but each case must be decided by the competent tribunal upon proof of the facts and probabilities, that life has been destroyed.

Where one, without lawful authority, assumes the administration and disposition of the estate of one deceased, and receives and pays out money belonging to the estate, although professing to act for the deceased on the supposition that he might be alive; he is liable to a creditor of the deceased, as *executor de son tort.*

THIS suit is upon a contract signed by Joseph Mann bearing date New York, May 30th, 1842, a copy of which is annexed. The general issue was pleaded, and the defendant also filed a brief statement, alleging that she is not the Executrix of Joseph Mann.

Ralph C. Johnson, called by the plaintiff, testified, that on May 18, 1843, he called upon Edward D. Peters, of the firm of Edward D. Peters & Co. at their counting-room in Boston, with the contract and a power of attorney from the plaintiff and Joseph Robertson, and informed him that he was prepared to pay the money on that contract; that Mr. Peters said that was the first knowledge he had of his agency; that Mann was lost; that he did not feel authorized to receive the money on Mann's account, and would not take it; that he absolutely refused to take it for Mann; that he had the money and was prepared to have made a tender in specie, had it been required, but as Mr. Peters refused to receive it, he did not tender or offer any money; that he exhibited the contract and power of attorney to Mr. Peters, and no other papers; and that he might have spoken of Robertson as interested.

Jonathan Durham testified, that he had a son, as second mate on board the Wyandot; that she was reported to have sailed from New York, in June, 1842, for a port in Yucatan, and there loaded in August following; and that his son has not been heard from, or the vessel, since; that there was a hurricane reported soon after in the Gulf, and many vessels were reported to have been there lost; that Otis Skinner sailed in her as first mate, and has not been heard from since that time; that his son owned one eighth of the vessel, and he has received from Nesmith & Co. $927,82, as the insurance on the vessel for that one eighth.

The plaintiff read the depositions of William Hopkins, James Nesmith and Lot Clark showing a recovery of the insurance on the vessel and freight and a payment of one quarter to the order of the defendant.

*In defence* the deposition of Edward D. Peters was read, which may be referred to.

It was admitted, that the vessel was sailed on shares by Joseph Mann, as master.

Nathan Pendleton testified that the port charges and tonnage duties and consul fees and charges for boat hire which might be paid by the master at the port in Yucatan, would be chargeable 1-2 to the vessel and 1-2 to the master: whether any and what were paid there by Capt. Mann, he did not know; that in August, 1842, he was on a voyage from Liverpool to New Orleans, and that there was a gale in the Gulf in September, that vessels were dismasted and others reported to be lost.

It was admitted that no will of Joseph Mann had been proved, and that neither the defendant, nor any other person had taken out letters of administration on his estate. The parties agreed, that the Court, upon the whole testimony, should decide upon the rights of the parties and enter such judgment and for such amount, if any, as he may be legally entitled to.

A copy of the contract referred to follows: —

"New York, May 30th, 1842.

"Mr. James P. White — Sir,

"Having received from James Nesmith and Louis Walsh a bill of sale of one quarter of barque Wyandot to be held by me as collateral security for a loan of sixteen hundred and fifty dollars, I made you on said barque; I hereby agree to transfer the said one quarter of barque Wyandot to you at any time within one year from this date, on your paying me the amount of said loan of sixteen hundred and fifty dollars with interest at the rate of six per cent.: it being well understood that if the said one quarter of said barque Wyandot is not redeemed within the time above named, then it is to be considered a *bona fide* sale. It being further understood that barque meets with any loss not covered by insurance, by not obtaining successful business or any misfortune or casualty of any name or description, it is to be borne by you, and all net earnings or profits after deducting insurance and charges of every name or kind shall be

paid over to you, when you claim to redeem her as afore-mentioned.

" Should you be prepared to redeem the said quarter of barque Wyandot at any time while I am absent, you may deposit the sum I paid for the quarter, with interest, in the hands of Messrs. Edward D. Peters & Co. of Boston, and take their receipt and on my return, I or my successor will settle with you for what profit or loss there may be up to the time of my arrival in the United States, on the condition aforementioned.

" Joseph Mann."

The only statement by whose procurement, or for whose benefit, the insurance on the vessel was effected by Nesmith & Co., is in these words in the deposition of Nesmith : — "There was a policy of insurance for $8000, effected upon said barque by the firm of which I am a partner, as agents for the owners of said barque, which policy was in full force at the time she last left New York, and our firm did, after the loss of said barque, on August 15, 1843, receive from the insurers the amount of the same. The amount left the owners of said barque, after deducting costs and charges, was. $7422,52." He states, that they paid to the attorney of the defendant, on August 16, 1843, $1855,63.

Means & Clark thus state the procurement of the insurance on the freight. " We were agents of the ship in procuring insurance on said freight. We acted for the master and owners."

*W. G. Crosby*, for the plaintiff, in his argument, advanced these legal propositins : —

The unqualified disclaimer and refusal of Peters to receive the money, obviated the necessity of a formal, technical tender. 3 T. R. 683 ; 6 Pick. 356 ; 5 N. H. R. 440 ; 2 Greenl. Ev. 497 and note ; Stark. Ev. 1391.

There was, however, no necessity for a formal tender ; there was no one to whom a tender could be made. The agency of Peters was revoked by the death of Mann ; there was no legal representative to whom the tender could be made ; and it was not the plaintiff's fault, that there was no

one authorized to receive the money, which he was ready to pay. 5 East, 202; 4 Peters, 332; Paley on Ag. c. 3, part 1, § 3. There was no necessity for bringing the money into Court, as the defendant had already received more money, which she was bound to account for to the plaintiff, than the amount due on the mortgage.

As there is no pretence of performance on the part of the defendant, the action would seem to be maintainable, if the defendant was executrix.

Where there are circumstances in the case showing a probability of death, no particular time is fixed by law, when the presumption of death will attach. A short time only is sometimes sufficient. 1 Greenl. Ev. 48, 49; 2 Eng. Com. L. R. 322; 11 N. H. R. 197; Parke on Ins. 434. The testimony, however, is sufficient to prove the death of Mann.

The defendant had rendered herself liable as executrix *de son tort* by her acts. 4 Mass. R. 658; 2 T. R. 97; 1 Dane, 570; Starkie on Ev. part 4, 553; 2 Greenl. Ev. 274; 1 Shep. Touch. 488.

Mann bound himself to reconvey the vessel upon the payment of the money unconditionally, and without any exception or reservation. He voluntarily assumed the duty; the law did not impose it upon him. It was one which his legal representative, his agent or attorney, might perform for him. The case does not come within the principle, that performance is excused by the act of God. 22 Maine R. 536; 2 Wms. Saund. 422; 16 Mass. R. 238.

The insurance was effected for the owners of the barque, and the plaintiff was to bear " all losses not covered by the insurance." The plaintiff had the same interest that Mann had. Whether the insurance money belonged to the plaintiff or to Mann, depended upon whether redemption was made within the year.

*Hathaway* and *Hinckley*, argued for the defendant; contending for these, among other points : —·

The tender was insufficient. It should have always been ready, and should have been brought into Court.

The plaintiff had an insurable interest ; and having neglected to insure himself, if he sustained loss, he is without remedy. Phil. on Ins. 41 ; 2 Pick. 249. The insurance effected by Mann was for his own benefit, and the plaintiff had no claim upon it. Mann could not have insured for the plaintiff's benefit. 2 Metc. 16 and 166.

The arrival in the United States of Mann, was the time, the condition precedent of his liability. The contingency has never happened, which might render him liable by virtue of the contract.

The sale became absolute immediately on the loss of the barque, which was before the offer to pay by Johnson. She could not be redeemed after the loss ; and the moment the redemption became impossible, the sale became absolute.

Immediately upon the loss of the barque by the act of God, it became impossible to execute the contract. The case comes within the principle, "that if a contract, when made, be legal and possible, and then becomes impossible by the act of God, it is discharged." 1 Rol. Abr. 451 ; 3 Com. Dig. 109 ; 4 Dane, c. 117, § 10 ; 5 Dane, c. 157, § 19 ; Powell on Con. 446, 447.

The defendant exercised no ownership over this property, other than was necessary for the preservation of it, and she is not liable on that account as *executrix de son tort*. 2 Greenl. Ev. § 343, 344, 345, and cases there cited.

The opinion of a majority of the Court, WHITMAN C. J. dissenting, was drawn up by

SHEPLEY J. — This suit is upon a contract contained in a letter written by Joseph Mann to the plaintiff from New York, on May 30, 1842. From that letter it appears, that Mann held one quarter part of the barque Wyandot, as security for a loan of money. He therein engaged to convey that fourth part to the plaintiff upon payment of the amount loaned, with interest, within one year ; and to account to him for one fourth of her net earnings. He sailed in the vessel, as master, from New York, in June following, and

arrived, at the port of Champeton in Yucatan, and in a letter bearing date on August 12, 1842, he stated, that he was about to sail from that place with a cargo for Bremen. This is the last information received of the vessel or of any one on board of her. There was information received of a hurricane in the Gulf soon after, in which several vessels were said to have been lost.

The plaintiff was authorized by the letter of May 30, 1842, to pay the amount due to Mann to Edward D. Peters and company of Boston, if he should wish to redeem that quarter of the vessel during the absence of Mann. An agent of the plaintiff, duly authorized, called upon a member of that firm at their place of business in Boston, before the expiration of the year, exhibited to him the contract, and informed him, that he was prepared to pay the money. And he testifies, that he was in fact prepared and ready to have paid, and in specie, if called for. Mr. Peters, in answer, stated, that Mann was lost, that he did not feel authorized to receive the money on his account, and that he would not take it. The vessel had been insured before she sailed from New York for $8000 by the procurement of Messrs. Nesmith & Walsh as agents for the owners. This sum, deducting the premium and other charges, was received by them for the owners on August 15, 1843. The master was to sail the vessel on shares, as it is called; that is, he was to victual and man her at his own expense, and to pay one half of all port charges, and was to receive to his own use one half of her earnings. It appears from the account of Peters & Co. that an insurance of $1500 had been procured on his half of the freight, which was paid on August 18, 1843. And that a like sum for the insurance of the owners' half of the freight was received by Messrs. Means & Clark on August 17, 1843.

To be entitled to maintain this suit the plaintiff must shew either a performance, or a readiness and an offer to perform, on his own part. The conveyance of a quarter part of the vessel, and the payment of the money loaned with interest, were by the contract to be simultaneous acts. In such case it

is sufficient for the party claiming from the other a perform-
ance of the contract to show a readiness and an offer to per-
form.   A formal and technical tender is not required of him.
*Rawson* v. *Johnson,* 1 East, 202 ; *Low* v. *Marshall,* 17
Maine R. 232.   If a tender were necessary, it would be suffi-
cient to show, that he had done all, that could be done on his
part to accomplish, what by the agreement he was bound to
do.   *Lancashire* v. *Killingworth,* Salk. 623 ; *Philips* v. *Hu-
gre,* Cro. Jac. 13 ; 2 Saund. 350, note 3.   This is proved by
the testimony of R. C. Johnson.

If this be so, it is contended in defence that performance
became impossible before that time by the loss of the vessel,
and is therefore excused.   The rule relied upon, that if a
thing become physically impossible to be done by the act of
God, performance is excused, does not prevail, when the es-
sential purpose of the contract may be accomplished.

If the intention of the parties can be substantially, though
not literally, executed, performance is not excused.   *Chapman*
v. *Dalton,* Plowd. 284 ; *Holtham* v. *Ryland,* 1 Eq. Ca. Abr.
18.   In this case the parties must have known, that the vessel
might be lost within the year.   Did they intend in such an
event, that each should protect himself or suffer his own loss ;
or that one insurance for the benefit of all should protect the
interests of all ?   This clause is contained in the letter of Mann
to the plaintiff; " it being further understood, that barque
meets with any loss not covered by insurance by not obtaining
successful business, or any misfortune or casualty of any name
or description, it is to be borne by you."   The intention is
here clearly exhibited, that such losses were not to be borne
by him, if covered by insurance.   The contract shews that the
parties to it contemplated, that insurance had been or would
be obtained, which might be beneficial to the plaintiff, although
not effected for him only.   How early, or by whose direction
the insurance upon the vessel had been effected, does not ap-
pear ; but the testimony of Nesmith shews, that it had been
effected before she sailed from New York.   In no other way
can the intention of the parties to the contract be carried into

effect, than to hold Mann to be accountable to the plaintiff for any such losses covered by insurance, which has been collected. Although the clause before noticed is followed by one having reference only to the earnings of the vessel, yet it is not so connected with it, as to be limited by it; and the language providing for a loss happening to the barque by "any misfortune or casualty of any name or description" is sufficiently broad to embrace a loss of the vessel. To refuse to make him thus accountable would require not only, that the intention of the parties should fail to be accomplished, but that the clause in the contract providing, that the plaintiff should not bear the losses covered by insurance, should be disregarded.

The contract also states that "all net earnings or profits, after deducting insurance and charges of every name or kind, shall be paid over to you, when you claim to redeem her." Will this admit of a construction, that a sum of money obtained by an insurance of freight was not to be accounted for? The premium and expenses were to be a charge upon the plaintiff by their being deducted from the earnings of the vessel; and if the money thus obtained was not to be accounted for, the effect would be to make the plaintiff pay the premium and expenses without allowing him to derive any benefit from it, when the contract in another clause provides by a necessary implication, that the plaintiff was not to bear losses covered by insurance. Lot Clark testifies, that the firm of Means & Clark owned three-eighths of the vessel and obtained insurance on the owner's half of the freight, and that they "were agents of the ship in procuring insurance on the freight;" and that Mann "owning one fourth of the barque" they paid one fourth of the amount, deducting expenses, to William Hopkins as the attorney of the defendant. The estate of Mann must therefore be held accountable to the plaintiff for an equitable adjustment of the amount received from the insurance made upon the vessel as well as from that made upon the freight.

There are two objections presented to the maintenance of

the action against the defendant. The first is; that there is no satisfactory proof of the death of Joseph Mann. The second, that no will has been proved or letters of administration taken out on his estate; and that the defendant has not so conducted as to be liable as executrix *de son tort.*

With respect to the first objection, the proof is, as before stated, that no information has been received of the vessel or of any person on board of her since she was about to sail for Bremen in August, 1842. The insurance made upon the vessel and upon her freight has been paid as for a total loss. When a person leaves his usual place of residence with an intention of returning to it, and continues to be absent for seven years, without being heard of, he is presumed to be dead. The time, when such presumption will arise, may be greatly abridged by proof, that the person has encountered such perils as might be reasonably expected to destroy life, and has been so situated, that according to the ordinary course of human events he must have been heard of, if he had survived. In such cases insurance companies are accustomed to pay, as in this case, after the lapse of one year, when the vessel sailed for an European port and has not been heard of since. And administration has been granted on the estates of those on board and not heard of after a lapse of two years. No general or certain rule can in such cases be established. Each case must be decided by the competent tribunal upon proof of the facts and probabilities, that life has been destroyed.

One who has sailed in a vessel, which has never been heard of for such length of time, as would be sufficient to allow information to be received from any part of the world, to which the vessel or persons on board might have been expected to be carried, and who has never been heard of, since the vessel sailed, may be presumed to be dead. The facts in this case being submitted to the Court, it should come to such a conclusion, as a jury might justly do ; and there does not appear to be any reasonable doubt, that the vessel, master and crew have all perished. The facts in relation to the second objection appear to be, that the defendant; by a power of attorney

by her signed, authorized William Hopkins to receive, and that he accordingly did receive of Means & Clark one fourth of the insurance on the vessel's half of the freight ; and of Nesmith & Walsh one fourth of the insurance on the vessel. He also settled with Peters & Co. and received of them a part of the balance due. All these acts were performed by the defendant, through her agent, on the 16th, 17th and 18th days of August, 1843. Hopkins states, that the defendant requested him to act as the agent of Joseph Mann, but as his only power to act was derived from the defendant, such direction cannot alter the legal effect of those acts. The defendant subsequently drew drafts on Peters & Co. for more than two thousand dollars in favor of other persons, which were paid to them ; and she thereby appropriated that amount out of the estate of her husband to the use of others. This she could do only by assuming the administration and disposition of the estate. These proceedings are quite sufficient to render her liable as executrix *de son tort.*

The manner in which the account should be stated, and the amount, which the plaintiff will be entitled to recover, ascertained, will be presented on a paper in possession of the clerk.

*Defendant defaulted, and judgment for plaintiff.*

A dissenting opinion was drawn up as follows by

WHITMAN C. J. — Not having been able to agree in the opinion just delivered, I will proceed to explain the reasons for dissenting therefrom. The action is founded upon a contract, entered into on the 30th day of May, 1842, between the plaintiff and the defendant's intestate. The intestate, after reciting that he had received a bill of sale of the barque Wyandot, as collateral security for a loan of sixteen hundred and fifty dollars, made by him to the plaintiff, stipulates to transfer the same to the plaintiff at any time within one year from the said thirtieth day of May, upon being repaid the sum loaned with interest ; but if not paid within the year, that the vessel should be considered as sold *bona fide,* meaning manifestly

that the sale should become absolute. It was further stipulated that, if the vessel should meet with any misfortune or casualty, or by not being profitably employed, whereby a loss might accrue, not covered by insurance, it should fall upon the plaintiff; and that all net earnings, or profits, after deducting charges, should be paid to the plaintiff upon his claiming to redeem as aforesaid. The intestate further agreed, that the plaintiff might redeem, by paying the amount loaned and interest, *on the condition* before named, to E. D. Peters & Co. The plaintiff, by his agent, called on Peters & Co. on the 18th day of May, 1843, and offered to pay the amount of the loan and interest, but was informed by them that they knew nothing of any agency or authority to receive the money, and refused to receive it. It appears, by evidence entirely satisfactory, that the intestate, with the vessel, had been lost at sea early in the fall previous.

It appears that Messrs. Nesmith & Co. had effected insurance for $8000,00 on the vessel for the benefit of the owners, one fourth of which, Nesmith says, after deducting charges, was paid to the agent of the defendant, being said intestate's " proportion of said insurance money." And it appears that Messrs. Means & Clark effected insurance on the freight of said vessel to the amount of $1500,00, which, with a deduction for charges, they received ; and paid one fourth of it to the defendant's agent, being, as one of them testifies, the proportion belonging to the intestate, " he owning one fourth of the barque as we had no doubt."

The claim of the plaintiff is now to recover so much of the insurance on the one fourth of the vessel, as the amount received therefor exceeded the amount of said loan and interest ; and also for the one half of the amount received for insurance on the freight. To the former the plaintiff lays claim because it was stipulated in case of loss, that he should be the sufferer to the amount of all beyond what the insurance would pay, and to the latter, because the intestate agreed to be answerable for the net earnings of said quarter part of said vessel, falling to the owner's share, she having been let to the intes-

tate upon shares, and he contends further, that, the insurance having been effected for the benefit of the owners, it was for his benefit, he claiming to have been owner in equity of one quarter of the vessel. And a majority of the Court are of opinion that his claim in both particulars is sustainable. To me however it appears otherwise.

There is not a scintilla in the case tending to show, that the plaintiff ever authorized either Nesmith & Co. or Means & Clark to insure, or to procure insurance for him. On the other hand both firms, by their testimony, show that they acted as agents for the intestate; that they were employed to procure insurance upon his interest; and that they received and paid over the amount of the losses to the defendant upon that supposition. There was then most clearly no insurance directly upon any interest remaining in the plaintiff, either legally or equitably. Upon what ground then can the plaintiff sustain his claim? It is urged that the intestate contracted to re-convey the vessel, and to account for a proportion of her net earnings upon certain terms and conditions, which, by the offer to pay the loan to Peters & Co., are supposed to have been complied with. But the intestate did not stipulate to transfer any insurance he might effectuate for his own security, upon either freight or vessel, in any event, to the plaintiff. Suppose the debt had been actually paid, after insurance had been effected by the intestate upon his interest in the vessel and freight, his interest thereupon would have ceased and he could not have recovered for his insurance; and nothing can be more obvious than that the plaintiff could not have recovered on any policy so effected; and the intestate could not, upon receiving such payment, have transferred any policy, so by him effected, to the plaintiff, so as to have been available to him. And as the vessel and freight were both extinct neither of those could be transferable. The loss of the vessel and freight, by inevitable accident, in the course of her authorized employment, put an end to the contract, the intestate having been fully indemnified by his insurance, and the plaintiff being exonerated from liability for his debt. The intestate was

careful to make his interest secure by his policies, while the plaintiff was content to be his own insurer upon whatever interest in equity or otherwise he may have had in the vessel or freight. And so, in my estimation, is without cause of action.