WILLIAMS v. VANDERBILT.

28   217
159   473

In an action against a carrier of passengers, to recover damages for the failure of the defendant to carry the plaintiff from New York to San Francisco, via Lake Nicaragua, according to his agreement, for neglect of duty in furnishing suitable accommodations &c., for detentions and delays on the route, and for sickness caused by unnecessary exposure to an unhealthy climate, &c. ; *it was held*, that it was entirely proper for the judge to receive evidence as to how much the plaintiff was exposed to the sun and rains while crossing the isthmus, and to show that the climate there was bad and unhealthy, so that the jury could determine whether the plaintiff's sickness was caused by the defendant's negligence or breach of duty.

*Held, also*, that the time the plaintiff lost by reason of his detention on the isthmus; his expenses there, and of his return to New York; the time he lost by reason of his sickness, after he returned to New York; and the expenses of such sickness ; so far as the same were occasioned by the defendant's negligence, or breach of duty ; were legitimate and legal damages, which the plaintiff was entitled to recover.

The defendant, a common carrier of passengers, agreed to transport the plaintiff from New York to San Francisco, by an agreement which specified that that portion of the route which was between San Juan del Sur, and San Francisco, should be traversed in a particular steamer — the North America. *Held*, that the promise to carry the plaintiff in a particular vessel was a minor part of the contract, which was to carry the plain-

tiff through ; and that the loss or wrecking of the North America did not excuse the defendant from carrying him beyond San Juan del Sur.

That if the loss of the North America was the act of God, it was the duty of the carrier to exercise diligence in providing another vessel, for the carriage of the plaintiff, and to use all the means in endeavoring to supply another vessel, which a diligent, careful man exercises in regard to his own affairs.

*Held, also,* that the plaintiff could recover back the money he had paid to be carried from New York to San Francisco, and his expenses while necessarily detained upon the isthmus, and the expenses of his journey from there back to New York, if the defendant, by the exercise of proper diligence, could have carried him from San Juan del Sur to San Francisco ; or if his detention on the isthmus, and subsequent return to New York, were justly imputable to the defendant's neglect of duty.

The true rule is that the non-performance of a contract is not excused by the act of God, where it may be substantially carried into effect, although the act of God makes a literal and precise performance of it impossible.

THIS action was brought to recover damages for the failure of the defendant to carry the plaintiff from New York city to San Francisco, via Lake Nicaragua. Three claims in the complaint charged the defendant with neglect of duty as a common carrier in not transporting the plaintiff. The fourth and fifth claims charged the defendant with fraud in not transporting the plaintiff. The action was tried at the Cayuga circuit, in October, 1855. One D. B. Allen acted as agent of the defendant, at the city of New York. He delivered tickets to the plaintiff, about the 1st of March, 1852, for transportation to San Francisco. One entitled him to a passage to Greytown at the mouth of the Nicaragua river, in the ship Prometheus, which was to sail on the 5th of that month ; another entitled him to a passage up the Nicaragua river, through Nicaragua lake and thence by land to San Juan del Sur on the Pacific ocean ; the other entitled him to a passage from the latter place to San Francisco, on the steamer North America, which was advertised to leave San Juan del Sur about fifteen days after the plaintiff would arrive there, according to the usual course of conveyances. The defendant owned the ship Prometheus, and was one of the owners of the North America. The Accessory Transit

Company issued the ticket which entitled the plaintiff to a passage up the Nicaragua river and through Lake Nicaragua. The plaintiff left New York in the Prometheus on the 5th of March, 1852, and arrived at Greytown on the 15th of that month, where he was detained eleven days. He then started for San Juan del Sur, on steamers of the Accessory Transit Company. He arrived at a place on the way, called San Carlos, on the 31st of March, 1852, where he was taken sick; and he there received news that the North America was lost or wrecked about the 27th of the previous month; which fact was not known to the defendant at the time of making the contract, nor until about the 20th day of April, 1852. The plaintiff arrived at San Juan del Sur on the 4th day of April, where he remained until the 9th day of May, 1852, endeavoring, but unsuccessfully, to procure a passage to San Francisco. He then returned to New York. He remained sick from the time he was taken at San Carlos until long after his return home, with a fever peculiar to the climate of Nicaragua.

The plaintiff gave evidence, upon which the jury found the defendant was a common carrier of passengers from New York to San Francisco. The judge submitted to the jury the question whether the defendant was or was not such a common carrier; and the defendant's counsel excepted to the charge in that respect. The plaintiff gave evidence of representations, at the time he paid for his passage and procured his tickets, that the Nicaragua route was healthy. They were made by a person in the defendant's office, who had the model of a ship, and to whom the plaintiff and other passengers were directed for information by Mr. Allen and others in his presence. The defendant's counsel objected to this evidence, and excepted to its admission by the judge. The plaintiff gave evidence that the climate at Greytown, and all the way over to the Pacific coast, and at San Juan del Sur, was unhealthy. This was received under the defendant's objection and exception. The plaintiff proved that he paid

Allen $250, in all, for the entire passage from New York to San Francisco. He also proved what his expenses were after he first landed at Greytown until he arrived back at New York.

When the plaintiff rested, the defendant's counsel moved for a nonsuit, or that the complaint be dismissed, but did not specify any ground for the motion. The judge refused to grant the motion, and the defendant's counsel excepted. The judge then decided that the plaintiff was not entitled to recover on the claims for fraud, being the fourth and fifth in the complaint, on the ground that the only representations or suppressions of facts respected the climate and healthfulness of the country on the isthmus, and it was not alleged in either the fourth or fifth claim that the plaintiff became sick. The defendant's counsel then moved that a nonsuit be entered as to the fourth claim in the complaint; which motion was denied, and the defendant's counsel excepted.

The judge charged the jury, that if the North America had become a wreck by the act of God, so that the defendant could not perform his obligation according to its terms, it was his duty to provide another vessel, with care and diligence; and if he did not employ all reasonable care and diligence, he being held to strict care and diligence, in providing another vessel to take the plaintiff the residue of the voyage, the plaintiff was entitled to recover. To which portion of the charge the defendant's counsel excepted.

The judge also charged the jury: "If the plaintiff has experienced loss of money, loss of health, detention upon the isthmus, derangement of his plans by reason of a violation by the defendant of an arrangement which he made, and which he assumed when he received the plaintiff on board his vessel, then you are to render to the plaintiff full compensation. If this loss of the plaintiff was the result of a misfortune, or the act of God, for which the defendant was not responsible—if he and his agent employed all the means which a diligent, careful man takes, in regard to his own

affairs, in supplying another vessel—if every thing was done that could be done, or that could reasonably be required of the defendant to relieve the passengers on the isthmus—then the defendant is not liable."

The defendant's counsel excepted generally to those parts of the charge which instructed the jury, that it was the duty of the defendant to supply another vessel to take the place of the North America. He also excepted to so much of the charge as left the jury at liberty, under the evidence, to award damages to the plaintiff, against the defendant, for faults occurring in the transportation from San Juan del Norte to San Juan del Sur. Also, to so much of the charge on the subject of damages as instructed the jury that they could award damages for the loss of time of the plaintiff, for his sickness while on the isthmus, for his expenses while on the isthmus, for the expenses of his return to New York, and for his sickness after his return to New York, separate exceptions being taken to the allowance of each of said items of damages. The judge had previously charged the jury that the plaintiff was only entitled to recover for such sickness as was caused by the neglect or breach of duty by the defendant. The jury rendered a verdict in favor of the plaintiff for $850 damages.

The defendant moved for a new trial, at a special term, on a case containing his exceptions; which motion was denied. Judgment was rendered on the verdict, against the defendant, in favor of the plaintiff, which was affirmed, and a new trial denied, at a general term of the supreme court in the seventh district. The defendant thereupon appealed to this court.

*Charles A. Rapallo,* for the appellant.

*George Rathbun,* for the respondent.

BALCOM, J. This court decided, in *Quimby* v. *Vanderbilt,* (17 N. Y. Rep. 306,) that a part owner of one of several

lines for the transportation of passengers, running in con-
nection over different portions of a route of travel, may con-
tract as principal for the conveyance of a passenger over the
whole route; and that such contract may be established by
the circumstances, notwithstanding the passenger receives
tickets for the different lines, signed by their separate agents.
Also, that passage tickets are generally to be regarded as
tokens rather than contracts, and are not within the rule
excluding parol evidence to vary a written agreement. That
decision shows, that the judge properly refused in this case
to nonsuit the plaintiff, and that he did not err in submitting
the question to the jury, whether the defendant was not a
common carrier of passengers from New York to San Fran-
cisco by way of Nicaragua, and did not contract, as such, to
carry the plaintiff the entire route for the $250, which the
defendant's agent received of him.

The evidence that representations were made to the plain-
tiff, when he made the contract for his passage, as to the
healthfulness of the climate on the isthmus, and to show that
such representations were false, was given before the judge
decided that the plaintiff could not recover for fraud, under
the fourth or fifth claim in his complaint; and when he so
decided and charged the jury that the plaintiff could only
recover for such sickness as was caused by the defendant's
neglect or breach of duty, the question of fraud was out of
the case. The defendant, therefore, was not prejudiced by
the evidence that such false representations were made to the
plaintiff.

It was entirely proper for the judge to receive evidence as to
how much the plaintiff was exposed to the sun and rains while
crossing the isthmus, and to show that the climate there was
bad and unhealthy, so that the jury could determine whether
the plaintiff's sickness was caused by the defendant's negli-
gence or breach of duty.

The appellant's counsel contends that the contract proved,
did not absolutely bind the defendant to carry the plaintiff

from San Juan del Sur to San Francisco, but only required him to furnish the plaintiff a passage upon the North America; and that the loss or wrecking of that vessel excused the defendant from carrying the plaintiff beyond San Juan del Sur. I can not agree to this proposition. In the first place, the jury must have found that the defendant was a common carrier of passengers from New York to San Francisco, and contracted as such to transport the plaintiff from the former to the latter place, or they could not have rendered a verdict, under the charge, in favor of the plaintiff. In the next place, if the loss or wrecking of the North America was the act of God, it was the duty of the defendant to exercise diligence in providing another vessel for the carriage of the plaintiff. He was bound to use all the means, in endeavoring to supply another vessel, which a diligent, careful man exercises in regard to his own affairs. He could not heedlessly leave the plaintiff upon the isthmus to die, or work his way to San Francisco, or back to New York as he best could.

The main thing the defendant agreed to do was to carry the plaintiff from New York to San Francisco. His promise to carry him in a particular vessel from San Juan del Sur, to the latter place, was a minor part of the contract; though, if such vessel had not been lost, he would have been obliged to carry the plaintiff in it.

I have asserted the doctrine that the loss of the North America did not wholly absolve the defendant from all duty under the contract. The true rule touching this question is laid down by Professor Parsons. He says, "The non-performance of a contract is not excused by the act of God, where it may be substantially carried into effect, although the act of God makes a literal and precise performance of it impossible." (2 Parsons on Cont. 3d ed. 185; see also *White* v. *Mann*, 26 Maine Rep. 361.)

The defendant, notwithstanding the loss of the North America, could have substantially carried the contract into effect to transport the plaintiff to San Francisco, if he had

exercised proper diligence, according to the verdict of the jury. For, according to the verdict, he could, by the exercise of due diligence, have procured another vessel and taken him to San Francisco; and that would have been a substantial performance by the defendant of the contract to carry the plaintiff in the North America from San Juan del Sur to San Francisco. The correctness of these views is so clear to my mind that I must reject as unsound whatever there is to the contrary in *Briggs* v. *Vanderbilt*, (19 Barb. 222,) and *Bonsteel* v. *The same*, (21 id. 26.)

The remarks of the judge, which authorized the jury to award damages to the plaintiff for "derangement of his plans by reason of a violation by the defendant of an arrangement which he made and which he assumed when he received the plaintiff on board his vessel," were somewhat obscure. They were interpreted by the Supreme Court to mean that the jury might award damages to the plaintiff for breaking up his journey, rendering it necessary for him to return. But this court can not determine whether those remarks were right or wrong, because no exception was taken to them by the defendant's counsel.

The time the plaintiff lost by reason of his detention on the isthmus; his expenses there, and of his return to New York; the time he lost by reason of his sickness, after he returned home; and the expense of such sickness; so far as the same were occasioned by the defendant's negligence or breach of duty; were legitimate and legal damages, which the plaintiff was entitled to recover. He could not procure a passage from San Juan del Sur to San Francisco, and therefore had the right to return to New York and his home. If one of the plaintiff's limbs had been broken, through the carelessness of the agents or servants of the defendant, it is settled that he could have recovered the expenses of the sickness occasioned thereby, and for the consequent loss of time; and also compensation for the bodily pain and suffer-

ing caused by such breaking of his limb.    (15 N. Y. Rep. 415; 18 id. 534.)

The principle on which a recovery, in such a case, is allowed for bodily pain or suffering, loss of time and expenses, sustains the recovery, in this case, for the plaintiff's loss of health and loss of time, and his expenses during his sickness. And that the plaintiff could recover back the $250 he paid to be carried from New York to San Francisco, and his expenses while unnecessarily detained upon the isthmus, and the expenses of his journey from there back to New York, admits of no doubt, if the defendant, by the exercise of proper diligence, could have carried him to San Francisco before he left San Juan del Sur; or if his long detention on the isthmus and subsequent return to New York were justly imputable to the defendant's neglect of duty to him.    But I will not discuss these questions further.

My conclusion is that no error was committed on the trial which entitles the defendant to a new trial; and that the judgment of the Supreme Court should be affirmed with costs.

ROSEKRANS and MARVIN, JJ. expressed no opinion.

All the other Judges concurring,

.    Judgment affirmed.