The City of St. Joseph *ex rel.* and to the use of the Hannibal and St. Joseph Railroad Company, Appellant, *v.* Edwin H. Saville, Respondent.

1. *Corporations, Railroad—Authority.*—The officers and agents of a railroad company have no authority to use the funds of the corporation in running a line of steamers in connection with the road, and all contracts for that purpose are illegal—Hoagland v. Han. & St. Jo. R.R., *ante* p. 451.
2. *Revenue—Municipal Corporations.*—The City of St. Joseph by its charter (Sess. Acts 1863-4, p. 430) had authority to levy and collect taxes for municipal purposes upon all property, real and personal, within the city limits. Steamboats, whose home port and *situs* was that city and where the nominal owners resided, are subject to taxation.
3. *Revenue—Ownership.*—For purposes of taxation, possession is *prima facie* evidence of ownership.

*Appeal from Buchanan Circuit Court.*

The plaintiff asked the court to make the following declarations of law:

1. The chief office and place of business of a railroad company is where the general office of the company is kept, and where the chief officers and managing agents of such company keep their offices and do the business of the company.

2. If the court believe from the evidence that the chief office and place of business of the relator was in the city of Hannibal, in the county of Marion, and State of Missouri, at the time of assessing and collecting the taxes sued for, and that relator was the owner of the steamboats described in the petition, and that said taxes were assessed upon said steamboats by the City of St. Joseph, then such assessment was made without any authority of law, and the defendant

Saville became a trespasser in coercing the collection thereof, and it will find for the plaintiff, notwithstanding it may believe from the evidence that the superintendent and other managing agents of said steamboats resided and kept their offices, and did the business of said steamboats, in the city of St. Joseph, and that said steamboats were loaded and unloaded there, and when not running they were laid up in the port of St. Joseph.

3. It is admitted by the pleadings in this cause that the relator was a corporation of the State of Missouri at the time of assessing the taxes sued for.

4. If the court believe from the evidence that the relator was the owner of said steamboats at the time of assessing the taxes sued for, then such assessment was made without any authority of law, and the defendant Saville became a trespasser in coercing the collection thereof.

5. If the court believe from the evidence that said steamboats, or any of them, were not within the limits of the city of St. Joseph on the 1st day of May, A. D. 1864, then such steamboats were not subject to taxation by the City of St. Joseph, and the court will find for the plaintiff as to such steamboats or steamboat.

6. If the court believe from the evidence that the relator was the owner of the steamboat J. H. Lacy at the time of assessing the taxes sued for, and that said steamboat was not within the limits of the city of St. Joseph on the 1st day of May, A. D. 1864, and never had been prior thereto, then the assessment thereon of the taxes described in the petition was made without any authority of law, the court will find for the plaintiff as to the taxes so assessed and collected.

7. If the court believe from the evidence that the relator was owner of said steamboats at the time of assessing said taxes, and that the same were assessed in the name of the Missouri River Packet Company, then such assessment was made without any authority of law, and the court will find for the plaintiff.

8. The ordinances read in evidence do not authorize the assessment of any taxes on the property of the Hannibal and St. Joseph Railroad Company to pay the St. Joseph and Topeka Railroad bonds, or the Roseport aad Maryville Railroad bonds.

9. The ordinances read in evidence do not authorize the assessment of taxes on property of the Hannibal and St. Joseph Railroad Company for the special tax of 1864.

10. The ordinances read in evidence only authorize the assessment of taxes on the stock of the Hannibal and St. Joseph Company in the hands of stockholders, and not upon the property in the hands of said company.

The court gave the 1st, 3d, and 6th, and refused the other instructions, to which plaintiff excepted.

*Carr*, and *Hall & Oliver*, for appellants.

I. The court below should have received in evidence the certificates of enrolment of the steamboats of relator, taxed by the City of St. Joseph. Those certificates prove that the domicil of said boat was not St. Joseph, where they were assessed, and that said boats were consequently not subject to taxation by said city—Hays v. Pacific Mail Co., 17 How. 596; 23 N. Y. (9 E. D. Smith,) 224.

II. The ordinance of 23d of August, 1864, did not authorize the assessment of relator's boats for the special tax of 1864. That ordinance taxes only such property within the city limits " *as is made taxable by law.*" What is meant by " property made taxable by law" ? " Made" implies something more than authorized or permitted.

It is said relator's property is subject to the special tax of 1864, because the city charter authorizes the city to tax all property within the city limits, and relator's property being within the city limits, was liable to be taxed by the city. In other words, the term in the ordinance of 23d of August, 1864, " made taxable by law," simply means " liable to be taxed under the city charter." If the construction be true, the words " made taxable by law" are without meaning, and

the ordinance would have had the same signification if these words had been omitted altogether. That certainly was not the understanding of those who passed the ordinance. The ordinance imposing taxes for general purposes merely direct taxes to be imposed on all property within the city without any limitation; but when special taxes are imposed the language is changed, and words of limitation and restriction are used, because it was not intended that all property should pay the special tax.

The steamboats were not assessed to the owners, as required by city ordinance. The city ordinances read in evidence taxed only the stock of the Hannibal and St. Joseph Railroad Company in the hands of its stockholders—Bangor v. Piscataqua R.R. Co., 21 Maine, 534; Redf. on Railw. 527–9, 531; 23 N. Y. 224; Ang. & Ames on Corp. § 460–1; Groves v. Slaughter, 15 Pet. 449; Rev. Stat. Mo. 1855, p. 412, § 8; 4 Metc. 187; 10 Mass. 517; 14 Mo. 314; 8 Watts, 289; 30 Mo. 560.

*Vories & Vories*, for respondent.

The only two allegations of fact in the petition relied on by the plaintiff to show the illegality of the levy of the taxes collected were 1st, that the chief office and place of business of plaintiff was in Hannibal, in Marion county; and 2d, that said steamboats were by the laws of this State exempt from taxation. There was no allegation that they were either taxed or taxable elsewhere than in the city of St. Joseph. Again, if these boats were taxable at all by the City of St. Joseph, it was because they were personal property within the city limits.

The statute of this State to provide for the levying and collecting of the revenue for State and county purposes, provides specifically what property shall be the subject of taxation, and amongst other articles enumerated are " shares of stock in banks and other incorporated companies, excepting manufacturing companies, the property of which alone shall be taxed, and all property owned by incorporated com-

panies, over and above their capital stock," &c.    Now
if the State should levy a tax on the "shares of stock,"
and then tax the very property represented by the shares
of stock, this would be double taxation; but it would be
competent for the Legislature to adopt whatever plan it
may think proper, either to tax the stock and reach the
property in that way, or to directly tax the property as
property.    In authorizing the city to levy and collect a tax,
the Legislature has adopted the latter plan, that is, to
confine the city to levying a tax on property, and to give
her no power to tax shares in stock—Acts 1864, p. 430–1;
R. C. 1855, p. 1322, et seq.; H. & St. Jo. R.R. Co. v. Shack-
lett, 30 Mo. 550.

The only question to be considered is whether these boats
were personal property within the city limits, and if so,
whether they were exempted from taxation by the city.
For it will be observed that the power conferred on the city
by the Legislature was to levy and collect a tax on property,
" both real and personal, within the limits of the city;" not
upon shares of stock, but on real and personal property
within the limits of the city; and this is the only way she
can tax, so that there can be no double taxation by the city.
The proper place to tax these boats, or any boats, even for
State and county purposes, is the *situs* from which they
depart.    The case of Hays v. The Pacif. Mail Steamship Co.,
17 How., does not conflict with this rule; and the case of
Mohawk & Hudson R.R. Co. v. Clute et al., 4 Paige, 384,
was decided on a special statute, requiring the property to
be assessed in a particular place, &c.    The exemption of
the property of the plaintiff from State and county taxation
by the Legislature did not have the effect to exempt said
property from taxation by the City of St. Joseph, provided
plaintiff chose to keep its property within the city limits, and
thereby avail itself of the benefit and protection of the laws,
regulations and government furnished by the city—Arnold
v. City of Lexington, 30 Mo. 480; Providence Bk. v. Billings
et al., 4 Pet. 560–1; Wilks v. City of Pekin, 19 Ills. 16.

It is not within the scope or purview of the business of a railroad to own and run a line of boats on the river, nor is such business within the object of the act incorporating the Hannibal and St. Joseph Railroad Company; wherefore it could not as a corporation own said boats; and if it has paid taxes levied on property belonging to another, and the taxes being assessed against another, there is no rule of law by which it can recover said money back, as there was in such case no compulsion on it to pay the money.'

No suit can be maintained against a collector and his sureties on their bonds when the collector is merely following the directions of the law and the precept in his hands; provided the authority from whence the precept emanated had jurisdiction of the subject matter; and as the assessor in this case had jurisdiction of the subject matter of taxing personal property, and as he levied said taxes and placed the tax book in the hands of the collector, he is protected thereby, and cannot be made responsible for the mistakes of others, even if mistakes have been made—Foxcraft v. Nevins, 4 Greenl. 172; Keller v. Savage, 17 Me. 444; S. C. 20 Me. 189; Caldwell v. Hawkins, 40 Me. 526, and cases cited.

HOLMES, Judge, delivered the opinion of the court.

The suit is upon the official bond of the collector of the City of St. Joseph. Its object is to recover back certain taxes levied and collected for municipal purposes, under the charter and ordinances of the city. No question is made but that the payment was compulsory. The claim rests upon the general ground that the property taxed was not subject to taxation by the city, was not assessed to the right owner, and was illegally collected.

The taxes were levied upon five steamboats running as one line of steamers on the Missouri river, and from St. Joseph to Omaha and to Leavenworth and to intermediate points, under the name of the Missouri River Packet Line. The business was done in the name and style of the Missouri

River Packet Company. St Joseph was the home port and the principal office, and the books of the company were kept, in the charge of their clerk, within the limits of the city. The clerk gave in the property to the collector for assessment, and it was assessed in the name of the company. The line of steamers was run under the management and immediate control of an agent, and it was conducted and held out to the world as an independent enterprise, doing business on its own account under that name.

The agent of this company paid the taxes under the compulsion of a levy, and under a written protest that the property was not owned by the company, but the real owner was the relator, and that the property was exempt from taxation as belonging to the Hannibal and St. Joseph Railroad Company, whose principal office was at Hannibal.

It appeared in evidence that the officers and agents of the railroad company had established this line of steamers with the funds of the corporation and were running it in connection with the railroad, and accounted to the company for the profits. It would seem to be well settled that an enterprise of this nature was clearly beyond the powers given to that corporation by its charter—Pearce v. Madison & Indianapolis R.R. Co., 21 How. (U. S.) 441 ; Hoagland v. Hann. & St. Jo. R.R. Co., *ante* p. 451. To allow this plaintiff to recover here would be to give sanction to a transaction which was illegal, and to contracts and arrangements which must be held to be utterly void for want of lawful authority to make them. All the world, dealing with the corporation, is bound to take notice of its charter, and to know its lawful powers ; whether the officers or persons who appropriated the funds of the corporation to this enterprise, and conducted this business in the name of the Missouri River Packet Company, thereby became a private partnership doing business on their own account, or in what manner they might be held responsible to the corporation for this misappropriation of its funds, or be held to account for the mon-

eys invested in this property, we need not now undertake to inquire.

The agent who paid the taxes, paid them for the owner. The ostensible owner was the Missouri River Packet Company. Whether this company was composed of the individuals, this agent included, who managed the affairs and had the possession and control of the property, we do not see but that they had the same authority to pay these taxes, that they had to conduct the whole enterprise. The property was in their possession, and possession was at least *prima facie* evidence of ownership.

For all the purposes of this case, we must hold that the corporation was not the legal owner, whatever equitable rights it may have had in the premises.

The city of St. Joseph was the *situs* and home port of these steamboats, and from which they went and returned. The property was within the municipal corporation and in the hands and control of the owners, or of the agents of the owners, whoever they were ; and this was enough to make it subject to taxation there for city purposes—Hoyt v. Commissoners of Taxes, 23 N. Y. 224. The city had express authority by its charter to levy and collect taxes for municipal purposes on all property, real or personal, within the city limits—Laws of 1863–4, p. 430, § 3. It was proved on the trial that one of these steamboats had never been at St. Joseph ; it was found by the verdict not to have been subject to taxation within the city limits, and accordingly the plaintiff had judgment to recover the amount paid for taxes thereon. Of this neither party complains.

These points effectually dispose of the whole case. There is no occasion to notice other questions which were made the subject of argument.

Judgment affirmed. The other judges concur.