Williams, J.
The defendant in error, desiring to obtain for the Lima Northern Railway, the school lot in one of the sub-districts of Bath township, in Allen county, on which there was located a brick school house and other necessary buildings, entered into a written agreement with the board of education, the-plaintiff in error, on the 7th day of November, 1895, whereby he agreed that in consideration of the conveyance by the board, of the school lot for the use of the-railway, he would, within sixty days from that time, convey to the board another described lot, then vacant, and remove thereto and reconstruct and rebuild thereon, the school house “so that it will be in a suitable and proper condition for school purposes.” And he further agreed that he would remove the wood house and other out buildings to the new site, and place them there in proper place and condition, dig-a well, put a. good pump in it, and construct a good and suitable fence around the lot. The board, in performance of the agreement on its part, on the 12th day of November, 1895, conveyed the school lot to the railway company, w7hich then took possession, constructed its road over the same, and has continued in its. occupation. And the defendant performed all the stipulations of the contract on his part, except the one by which he agreed to remove the school house to the-new site and there reconstruct and rebuild it. Hav *521 ing failed and refused to perform that part of his agreement, the board proceeded to, and did erect on' the new site, at a cost of $1,349, a new school house exactly like the one that was on the lot conveyed to the railway company, except the addition of a cupola, which cost fifty dollars. The reasonable cost of building a school house on the new site, of the same size and material as the one which the defendant agreed to remove, reconstruct and rebuild there, it is agreed in the statement of facts, would be one thousand dollars. After having made due demand of the defendant, the board of education brought the action below to recover, as its damages for his breach of the contract, the amount expended in the building of the new school/ house. The defense, which is admitted to be true, is based solely on the ground that on the 28th day of November, 1895,> the school house mentioned in the contract was blown down and demolished by a violent wind storm so that it “could not, as a school house,, be removed.”
The effect of the storm, it is claimed, rendered im-' possible the performance by the defendant of that stipulation of the contract by which he undertook to remove the school house and reconstruct and rebuild it on the new site, because its existence and identity as a building were destroyed, and that discharged him from all liability on his undertaking. It appears to be accepted by the authorities that, as a rule, there is an implied condition in executory agreements, to the effect that their performance shall not be rendered impossible by the intervention of unforeseen,accidental and uncontrollable superior agencies, and that their performance will be excused when it is prevented by such agency; as where there is a contract for the delivery of specific property at a future time, *522 and before tbe time of delivery arrives, tbe property is destroyed by inevitable accident. But, it is an important part of that rule, that tke_\intervention of such inevitable accident will not excuse performance when the essential purposes of the contract are still capable of substantial accomplishment, although a literal performance has become physically impossible. 7 Am. & Eng. Ency. of Law, 2d ed., 14=8 and cases there cited. White v. Mann, 26 Me., 361, 368; Williams v. Vanderbilt, 28 N. Y., 217, 223; Robson v. Mississippi River Logging Co., 61 Fed. Rep., 893.
The impossibility of performance of the contract by the defendant is supposed to have arisen from the fact that, as the building was blown down, it could not thereafter be removed “as a school house,” that is, as a standing building. But, to remove it in that wray was not exactly the obligation of the contract. The school building is spoken of in the” contract as the thing to be removed, and not as designating the manner of removal. It is practicable to remove a building intact; but that is not the only way. It may be removed, within the common understanding, by taking the material and reconstructing or rebuilding it at another locality. Which method w-ould, in this instance, have been the more practicable and less expensive, does not appear. But the latter appears to have been in the contemplation of the parties; for, the contract is not only that the defendant should remove the school building from ydiere it stood, but also that he should reconstruct and rebuild it on the new site, so that it should be in suitable and proper condition for school purposes. To '^reconstruct is to rebuild, and to rebuild is to “build up again; to build or construct after having been demolished.” Century Dictionary. Nor is the mean *523 ing of the term restricted to the erection of the new building on the site of the old one. So that, notwithstanding the school house was blown down by a storm, it remained possible for the defendant to reconstruct and rebuild it on the new school site and thus perform his contract, not only substantially but strictly and exactly. This construction of the contract is strongly accentuated by reference to the provision for removing tbe wood house and out buildings. These buildings probably being small wooden structures, the agreement with respect to them is, simply that the defendant shall remove them to a proper place on the new site and there put them in proper condition. The absence of any stipulation to reconstruct or rebuild them, shows that those terms were used understanding^ and accurately with respect to the school house. It seems evident, looking to the entire agreement, that the essential purpose which the parties had in mind was, that there should be placed by the defendant, without expense to the board of education, the same facilities in the way of buildings for carrying on the public school there, that existed at the time of the contract on the lot then owned and in use by the board. And if, because it was cheaper to do so, or for other reason, the defendant had constructed on the new site entirely new buildings, equivalent of the old ones, that would have been a substantial compliance with his contract, which the board of education could not refuse to accept. The most favorable view that can be taken of the case for the defendant is, that under the contract two disitinct modes of performance were open to him; one by removing the school house as a standing building by means of jacks and rollers, or other appliances, the other by tearing it down and using the material for its reconstruction, either of *524 which he was at liberty to adopt, and either of which, it may be conceded, would have been a sufficient compliance with his contract. Though the former mode of performance became impossible, the latter was not.. And/“it can hardly admit of contradiction,” said the-vice-chancellor, in Barkworth v. Young, 4 Drewry, 1, 24-25, that where a party is allowed at his option, to-perform his contract in “one or the other of two modes; and one of them becomes impossible by the act of God he is bound to perform it in the other mode.” And see State v. Worthington, 7 Ohio, 171-172. This rule rests upon the substantial reason that, so long as the contract is capable of performance in any mode contemplated by the parties, its performance cannot be said to have become impossible. A clearer case fob the application of the rule than the one before us can hardly be conceived. Beside, the act of God, so-called, which excuses the performance of a contract because that has become impossible, does not necessarily discharge the party from the obligations arising from the contract, except, it may be, when the contract is wholly executory on both sides. If an artist contracts to paint a picture for ten thousand dollars received from his patron, and thereafter becomes incapacitated from blindness to fulfill his promise, by what right is he justified in claiming the money? We are not aware of any principle, and have not been referred to any adjudicated case, that would give absolution from the obligations of a contract to a party who has received from the other full consideration for a promise which the former has become unable to fulfill, and at the same time protect him in the enjoyment of the consideration paid. The act of God may properly lift from his shoulders the burden of performance, but has not yet been extended *525 so as to enable Mm to keep the other man’s property for nothing. ■ It is plainly apparent from the contract in hand, that the parties, as the basis of the agreement, estimated the value of the lot conveyed by the board of education to the railway company to be as much more than that of the lot conveyed to the board as it would cost to place on the latter a school house, in suitable and proper condition for school purposes, and other conveniences for a public school, equivalent to those on the lot owned by the board when the contract was made. And, in so far as the defendant has failed to do those things, he has received from the board a valuable consideration which he retains, and for which he has not given what he promised, nor anything whatever. It appears from the agreed statement of facts that the reasonable cost of doing what the defendant so failed to do, is one thousand dollars, which amount the plaintiff expended in the fall of 1896, toward placing a school house on the newly acquired site, after demand on the defendant to perform his contract in that behalf, and his failure to do so. We think the judgments below should be reversed, and judgment rendered for the plaintiff in error.

Judgment accordingly.